ASCII is on calendar for argument, and it's Oddei v. ScanSTAT Technologies. The case ending in 55035 now. Good morning, Your Honors. May it please the Court. So at issue in the second appeal is whether or not ScanSTAT is responsible, reliable for violating the Title VI MedSec, and that statute prohibits a health care provider from disclosing a patient's medical information without their authorization. So we get to really a similar issue as we had in the prior appeal, whether or not ScanSTAT is a provider of health care. Correct, under a different definition, under a different statute. But yes, that is one of the primary issues here. And this one, I think, is easily satisfying because the statute itself says that it defines provider of health care in many different ways. One way you can prove that an entity is a provider of health care is if you can plead and prove that they maintain medical information to make it available to individuals at their request. Isn't that really talking about something like an app on your iPhone that has information stored and you can access it? Not simply someone who goes in and copies a record. It could be that, but I think it could also be a copy service. And that brings me to... Well, how would you define the terms of maintaining medical information? It could be in many ways.  A storing, managing medical information. Correct, that'd be one way to... Do you have any allegations, specific allegations to establish that ScanSTAT does more than copy medical information? Yes, in paragraphs 19 through 29, it extensively pleads ScanSTAT's role in maintaining and transmitting information, medical information of patient records. I'd also like to point out ScanSTAT repeatedly claims in its briefing that we characterized it as a copy service. There isn't one instance in the First Amendment complaint or in the briefing where plaintiff ever characterized it as such, that ScanSTAT's characterization. Characterized? I'm sorry, Mr. There isn't one allegation in the First Amendment complaint or in the briefing where the plaintiff has characterized ScanSTAT as such. That's something that ScanSTAT has decided to characterize itself as. Whether you call it a copy service, which ScanSTAT apparently is claiming it is, or whether you call it a medical information maintenance provider. I don't think the label is really important. I think what's important is what facts are alleged to show that it maintains medical information to make it available to individuals at their request. And I think the FAC clearly does that in paragraphs 19 through 29. Second point, plaintiff never authorized ScanSTAT to disclose anything to anyone. ScanSTAT was a stranger to plaintiff. ScanSTAT may have a relationship with Optum. Plaintiff never agreed to allow Optum to take her private medical information and to transmit it to anyone. Now, one of the issues that the lower court had was, well, essentially no harm, no foul. You essentially have a plaintiff who's asking for medical information and ultimately gets transmitted to her attorney. The issue here really isn't whether the information ultimately got into the hands of the person who the plaintiff wanted it to get into. The issue here is the patient control over her information and control over who's transmitting very sensitive data. And I think one of the purposes of the statute is to allow the patient to control who is transmitting that data. So it's not an issue of who's maintaining it or whether it ultimately ends up in the right hands. It's an issue of does the patient control the manner in who is disclosing that information. And I think that's a big issue that the lower court didn't see and the Respondents' Council hasn't seen. And I will reserve my remaining time for rebuttal. You want to address the authorization, whether there's authorization to disclose? Yes. So as I stated, plaintiff never submitted an authorization to ScanSTAT. She submitted it to Optum only. Apparently what Optum did is gave ScanSTAT a copy of that authorization. ScanSTAT position is essentially like a hot potato. So if ScanSTAT believes that so long as it has physical possession of an authorization that wasn't provided to it by the plaintiff, that they have the green light to do whatever they want with her information. And that's just not how authorization works. It's not transferable. And so with respect to the CMIA cause of action, ScanSTAT never had any. But is there anything in the statute that requires that ScanSTAT be specifically listed? In other words, tethered your argument to actually the language of the statute? Yes, Your Honor. Well, the plain, I would respond to it like this. The statute says a provider of healthcare shall not disclose patient medical information without first obtaining authorization. That's just the plain language of the statute. Nothing in the statute says that the authorization is, quote, obtained by merely getting a copy of the authorization from some other party. But there is no dispute that there was an authorization to Optum? Correct. So you're making, say, if Optum had just directly provided the information, there would be no violation here? Correct. And again, the issue here is transmission. See, the plaintiff, in this case, because she decided to give the authorization to Optum, she's trusting Optum. She could have vetted Optum and understood that if Optum transmits the information to me, it's going to be safe. Whereas if Optum is free to just delegate that responsibility to provide the information to some other party, it could be transmitted in a way that's not secure. You know, suppose Optum gives the authorization to negligent maintenance of medical record corporation. And negligent maintenance of medical information corporation sends the records via email. It's unsecure, and it gets hacked, and her information is now public. The point of the statute is to control who transmits that information. And in this case, plaintiff lost that control and Optum made that decision for her and decided who was going to transmit her information. And that was a breach of the statute. I see a potential standing issue that I want to give you a chance to address because Article 3 standing requires an injury. And does she have any sort of injury here? She asked that the records be disclosed to counsel, and the record got disclosed to counsel. So, how do you get past that? Yes. So, the language of the statute itself, Civil Code 56.36, Subsection B1, specifically states that plaintiff need not show injury in order to state a cause of action under that claim, and it does have an option that allows her to prove damages. But it also has the option under 56.36B1 to get nominal damages and have a presumed injury. Right. There's Supreme Court authorities, Bocale and versus Robbins that says Article 3 standing requires a concrete injury even in the context of a statutory violation. So, the concrete injury part seems to be missing here. You're saying if the statute authorizes it, then you get past that Supreme Court authorities, then you're positioned. It is my position, but even if it wasn't sufficient to get past that Supreme Court authority, there was an injury by virtue of the fact that plaintiff's loss of control over who controls the transmission of her medical information. It may not be a injury that one can quantify in terms of dollars, a monetary loss, but it is an injury, the mere fact that somebody who wasn't authorized to send her information, to transmit it, did so. All right. Thank you. Thank you. Good morning again, Your Honors. May it please the Court. Kimberly Coward for Pili, ScanStat Technologies, LLC. Appellant's confidentiality in the Medical Information Act claim fails for multiple reasons, any one of which is fatal to the claim. First, the CMIA governs disclosure of medical records. By its terms, it does apply to ScanStat, which is a copy service provider, not a provider of healthcare. It doesn't even fall within the statutory definition of provider of healthcare, which my colleagues seem to have glossed over a bit. But a provider of healthcare in this context is also defined as businesses that are organized for the purposes of maintaining medical records. I can't tell from the complaint how ScanStat really works. Is it just a conduit where people upload the request and then upload the records, and then you sort through them, or do you actually have clients for whom you serve as a repository of medical records? Your Honor raises a good point. First of all, that it's not clear from the allegations, any facts, to suggest that ScanStat actually maintains anything in paragraphs 19 through 29 referenced by my colleague. It only mentions that ScanStat copied and produced. To your question, how does it work, well, in the appellant's case, it worked in the manner, not that she logged on to any website, not that she went through any ScanStat system, but that she submitted a request to Optum. She didn't do any or follow any procedure through hardware or software that involved ScanStat. In fact, the fact that she did submit her request to Optum indicates that she didn't truly believe that it was ScanStat that was somehow maintaining her records. And your Honor raised a very good point, too, about the software or hardware. The statute is clear. The type of software or hardware that we're talking about is a medical application. It's not just any old software or hardware. So ScanStat neither maintains information, and it's only alleged to have copied or produced. And it doesn't provide any sort of software or hardware that would allow 56.06 to kind of bootstrap it into the provider of healthcare definition. Not all. Can you make a representation? I realize that it's not in the complaint. Are you saying that if there was a specific allegation that said ScanStat maintains records for Optum, that that would not be true, that something would be denied? Well, without getting too much into the factual merits of the case, and just looking at the pleadings, which is what the judgment was on, I would say that the allegation was that the records were actually transferred to ScanStat. Plaintiff actually alleges that Optum transferred the records to ScanStat, and properly did so, quite frankly, under the terms of the statute. Plaintiff admits that they were properly taken from point A to point B, B being ScanStat. In this instance, in this scenario, all ScanStat did was copy and produce. And charge. We didn't have any other particular situation before us, besides that of Miss O'Day. But another reason, separate and independent grounds for the dismissal of the CMIA claim, is the existence of the authorizations. Appellant admits that she signed the authorization, and once again, this court is spot on about the actual statutory language. Nothing in 5610 requires that the authorization be transmitted directly from the plaintiff to the actual copying entity. Nothing says that it needs to come from plaintiff. All that it requires is that the entity have the authorization. And in this case, plaintiff admitted that she signed the authorization, transmitted it to Optum. Optum, properly under the statute, provided that to ScanStat, and ScanStat provided the records. Your Honor, raised a couple of times that properly under the statute, Optum transmitted the authorization to ScanStat, what exactly are you relying on there? You know, it's alleged in the first amendment complaint, and it was cited in the district court's order as well, and I apologize for not knowing offhand what that is. I want to say it's 5306, but I'm not sure if that's accurate. It is, however, alleged in the first amendment complaint. Is there actual statutory language that you can point to that makes clear that a healthcare provider is allowed to transmit an authorization to a copying service? Is there something that actually, in the statute, that you seem to be arguing the statute authorizes this? Is that your position? It is my position, and again, it is alleged in the complaint. Okay, what provision of the statute are you relying on? Let me just step aside here. I'll go ahead. And you may have seen me trying to grab my binder and flip through it to find that particular allegation. ER 231. I'm sorry, ER 231. ER 231, are you relying on the fact that the first amendment complaints, I thought those were awarded by request to SCAMS, yeah? That is the fact that the records were actually transmitted and not maintained, but there is, to your Honor's question, an actual statute alleged in there where the plaintiff conceives that the transfer of the records, the provision of the records, was actually pursuant to statute. With the 6.10? That sounds right. It was likewise cited by the district court in the one site that I did not write down, which I assure you is there. While I flip through that, I do want to point out, though, that it was, here we go, 56.10c3. Alleged at paragraph 65 of the first amendment complaint. Plaintiff alleges although SCAMSTAT technology was authorized to receive plaintiffs and class members medical information pursuant to civil code section 56.10c3, their disclosure that it goes on, it takes issue with. So, thank you for letting me grab my binder. That is the statute to which I'm referring. Then going to 56.10a, that's the provision that says that the. How do you deal with this? I understand your argument. As I understand your argument, it's not well if the 6.10c says that SCAMSTAT can't disclose without authorization. It doesn't say that the authorization has to specifically list SCAMSTAT. Is that the argument? Not only that, it doesn't say how it has to be received. So, how it makes this, as you. That is the argument. The distinction that's different. Right. How do you respond to counsel's point that she specifically listed Optum because she's vetted Optum, so now there's no expectation that Optum would then turn the authorization over to someone else. It's not in the statutory language one way or the other, but there's some sort of reliance, interest on her part because she didn't specifically know or would have authorized yet another third party to be the one who's taking her records, copying it, viewing it, disclosing it. How do you respond to that? Well, it's untethered to the statute. I mean, the statute just says that there need be an authorization. The difference between obtaining and receiving is a distinction without a difference there. And the idea of control is odd, I would say, in that the medical records presumably came originally from the appellant's actual medical provider and then went to Optum and then went to ScanStat, all of which is authorized by the appellant. And Your Honor raised an excellent point about the SpokeU decision. At the end of the day, they went exactly where she asked that they go and that is to her personal injury counsel, the same counsel that we have here, such that there's no actual injury. That could get us into an interesting discussion about the Regent case we decided where that court actually rejected a SEMA claim because there was no actual injury in that particular matter. I think that it's reading into the statute language that just isn't there some obligation that the authorization has to list an actual name or has to be received by an actual person or has to come directly from the patient to the holder of the authorization. None of that language is in Section 5610A. We have no basis to read it into the statute. We're left with, if you have an authorization signed by the plaintiff, then you are allowed to disclose her records. This is why the district court called this claim absurd. This is why that absurdity led the district court to characterize this claim as apparently lacking in good faith. The district court was polite in that terminology, but indeed it is. An appellant offers us nothing more to explain why she is suing a company for giving her the records that she authorized to be disclosed, asked to be delivered to her counsel, precisely what they did, what the statute allows. Her only explanation is to try to interject words that simply aren't there and there's no basis to interject them. Even if the statute did apply, even if the authorization wasn't effective, we still have four different exceptions to the Confidentiality and Medical Information Act that would still allow the statute to have acted as it did. One of those is that they delivered the records to the patient, appellant herself. That's one of the exceptions. One is that they were requested for litigation purposes. That's expressly what appellant called them in her authorization form. She needed the records for litigation purposes. That's another exception that allows for the disclosure of medical records, even without the sign of authorization, if they're required by law. Certainly appellant isn't taking the position that Gainstead wasn't legally obligated to turn over the records. It was required by law. And in fact, appellant alleges that both Optum and Gainstead were obligated to produce these medical records within five days under the law. So certainly that exception applies as well. Turning to the issue of leave to amend, the district court did deny leave to amend, but quite frankly it was asked for. In not asking for it, there was also no showing of a potential for cure, that there was a capability of cure. This of course is an abuse of discretion standard. And not only did the court consider the issue anyway, the district court went as far as to point out that because of the defects that it found, namely the existence of the authorizations, but also the inapplicability of the statute to Gainstead, there was no capacity to cure, it would be incapable of cure. So the district court was correct on that basis as well. Is there any further questions? I'll submit on that argument. We can go to the piano. We have any additional questions. Great. Thank you very much. To address the issue of whether ScanStat, quote, maintains records, it is quite unfathomable to believe that ScanStat is provided with copies of medical records that it maintains electronically and available on its portal. And that they're not also, quote, maintaining those records. Once, and this is something Respondent's Counsel completely glossed over, because she probably realizes that it's probably impossible to be in receipt of records and not, quote, maintain them. I just think it's a factual impossibility. And so the way ScanStat works is it does have a portal where patients can access those medical records. So they're, by definition, maintained on some sort of electronic database. And I also think that it is unreasonable to argue that Optum gets to decide for a plaintiff who transmits her records. The argument, again, seems to be that the authorization form is some sort of golden ticket. Anyone who's in possession of this authorization form, therefore has plaintiff's authorization to produce medical records. So I suppose Optum could do a mass mailing of this authorization form to the top 100 fraudsters in the country, and they could thereby have access to her medical information. And they would have authorization under the statute. You know, if you take it to its logical conclusion, I think the court can see that it's wrong. It's not a valid argument. Simply having physical possession of an authorization form isn't, quote, authorization within the meaning of the statute. None of the exceptions that ScanStat's Counsel mentioned apply. The medical records were not provided to plaintiffs. They were provided to her counsel. What ScanStat argues is that, well, counsel is her, quote, authorized representative. Well, the problem with that is the statute doesn't allow for transmission of these records to a, quote, authorized, I'm sorry, to her counsel. It only authorizes disclosure of the records to, I think the language the statute uses is an authorized representative. But the statute defines authorized representative very specifically. It's either to the individual directly. I think it's to, yeah, so the way the statute defines this is patient representative, lawyer isn't within the definition of patient representative. And so that exception does not apply. The litigation exception doesn't apply. It only applies when the records are requested pursuant to a subpoena by a party to a litigation. And so the plaintiff was not a party to any litigation at the time these two litigation records were sought. So that exception does not apply. And lastly, plaintiff did seek thief to amend and respondent's counsel even quotes a portion of the court's order pointing out the fact that plaintiff did ask for thief to amend and yet she still didn't. So what would you add to your complaint if you were given thief to amend? Was that the decision? Yeah, so the answer is going to be similar to the one I gave earlier, which is it's a little difficult to know in advance what specific facts the court found to be lacking. We have the court's dismissal order. So what would you do to ensure the deficiency is identified in the court's dismissal order? Well, number one, I don't think that the F-8, the First Amendment complaint is lacking in facts. I think it sufficiently pleaded them. But if the court required more facts, perhaps we could allege more specifically that, let's see, Skanstat maintained medical information to make it available to individuals at their request. We could specifically mirror the language of the statute, which we know we could prove ultimately. We could allege that Skanstat, the plaintiff never authorized Skanstat to disclose the information to anybody. We could allege, plead that none of the exceptions of Skanstat is arguing apply, and that plaintiffs suffered an actual injury by virtue of the fact that some unauthorized party had control of her records and transmitted them, among other things. So unless the court has additional questions, I will submit. All right. Thank you very much to counsel both sides for your argument in both cases today. The matter is submitted. And the jury is adjourned.
judges: NGUYEN, SUNG, Fitzwater